**NATIONAL LABOR RELATIONS BOARD**

v.

**KINGSTON TRAP ROCK CO., Pennington Quarry Co. and Lambertville Quarry Co., Appellants.**

**No. 11558.**

United States Court of Appeals Third Circuit.

Argued March 22, 1955.

Decided May 11, 1955.

**300**

Clifford D. Reznicek, New York City (Bandler & Kass, Julius Kass, New York City, on the brief), for appellants.

Ramey Donovan, Philadelphia, Pa., for appellee.

Before MARIS, GOODRICH and KA-LODNER, Circuit Judges.

KALODNER, Circuit Judge.

This is a proceeding to enforce subpoenas duces tecum served by the National Labor Relations Board ("Board") upon Kingston Trap Rock Co., Pennington Quarry Co., and Lambertville Quarry Co. ("Kingston"). The District Court issued an order enforcing the subpoenas and we granted a stay pending determination of this appeal.

The relevant facts are as follows:

On August 30, 1954, Local 734, International Hod Carriers' Building

Common Laborers Union filed a charge of unfair labor practices under the National Labor Relations Act[1] with the Fourth Regional Office of the Board in Philadelphia, against Kingston. Copies of the charge were sent to Kingston on August 30, 1954. On the same day Examiner Eugene M. Levine, by letter, requested certain information from Kingston for the purpose of determining whether it was within the jurisdiction of the Board. No reply was made.

Examiner Alan Zurlnick, to whom the case had been reassigned, made renewed request for the information by letter dated September 16, 1954. He further requested the names, addresses, and value of sales to each of Kingston's customers during the preceding year. By letter dated September 27, 1954, Kingston, by one Hervey S. Moore, furnished the information requested by Zurlnick with the exception of the names, addresses, etc., of its customers. During the following two weeks Zurlnick repeatedly attempted to contact Moore by telephone but was unsuccessful. On November 10, 1954, a letter was written to Moore renewing the request for the names and addresses of Kingston's customers but adding the limitation that only the names of firms to whom more than $10,000 worth of material had been sold need be supplied. November 15th was set as the date by which this material should be made available. On November 12th, Julius Kass, attorney for Kingston, spoke with a representative of the Board and requested a postponement of the November 15th date because of prior court engagements. On November 16th, Kass was notified that unless the requested information was received by November 24th a subpoena duces tecum would be issued. On November 29th, no communication having been received from Kass, the subpoenas were served, returnable before the Regional Director for the Fourth Region on December 2, 1954.

[1] 29 U.S.C.A. § 151 et seq.

Kass appeared at the Regional Office on the latter date. He declined to furnish the customers' names, contending that the Board's demand "was beyond the rightful scope of the inquiry." He also produced an affidavit of one Jamie Martinez, an employee of Kingston, which reported interrogation by Zurlnick of Martinez on December 1st. The affidavit was designed to establish that Zurlnick was partial to the Union. On December 3d, Kass filed with the Board in Washington, D. C., a petition to revoke the subpoenas. This petition did not contain Martinez' affidavit nor did it allege any misconduct by Zurlnick.

The term of the General Counsel of the Board expired on December 20, 1954. This proceeding was instituted on January 20, 1955. A new General Counsel was confirmed by the Senate on March 8, 1955.

Kingston contends that the subpoenas duces tecum are invalid. Its first ground of attack is that the Board has no power to investigate charges in the absence of a General Counsel. It cites as the basis of his contention Section 3d of the National Labor Relations Act. The identical argument was made unsuccessfully in Bonwit Teller, Inc., v. National Labor Relations Board, 2 Cir., 1952, 197 F.2d 640, 644, certiorari denied, 1953, 345 U.S. 905, 73 S.Ct. 644, 97 L.Ed. 1342. There the General Counsel resigned while the agency hearing before a trial examiner was in progress. In rejecting Bonwit's contention the Court stated:

> "Before his resignation the General Counsel had delegated to his representative at the hearing authority to prosecute the complaint. We find no impropriety in such a procedure and hold that the objection to it was properly overruled."

■ The instant case affords even less basis for attack since the subpoenas had been issued prior to the expiration of the General Counsel's term. The only action taken after this period was the institution of the present proceeding. The power to institute proceedings for enforcement of a subpoena is vested in the Board. 29 U.S.C.A. § 161(2). Normally this function has been delegated to the General Counsel. When the General Counsel's term expired on December 20, 1954, the Board merely substituted the Associate General Counsel as delegatee.[2]

■ As a second ground for reversal Kingston urges that the Board has not shown reasonable grounds indicating that Kingston is subject to the National Labor Relations Act. The very purpose of issuing the subpoena, however, was to secure information which would permit the Board to determine whether Kingston's activities came within its jurisdiction. A prior showing of probable cause as to jurisdiction was not required. In Oklahoma Press Publishing Co. v. Walling, 1946, 327 U.S. 186, 66 S.Ct. 494, 90 L.Ed. 614, the Supreme Court dealt exhaustively with this very issue. The Court there stated 327 U.S. at pages 215–216, 66 S.Ct. at page 509:

> "Congress has made no requirement in terms of any showing of 'probable cause' * * *. The result therefore sustains the Administrator's position that his investigative function, in searching out violations with a view to securing enforcement of the Act, is essentially the same as the grand jury's, or the court's in issuing other pretrial orders for the discovery of evidence, and is governed by the same limitations. These are that he shall not act arbitrarily or in excess of his statutory authority, but this does not mean that his inquiry must be 'limited * * * by * * * forecasts of the probable result of the investigation. * * *' Blair v. United States, 250 U.S. 273, 282, 39 S.Ct. 468, 471, 63 L.Ed. 979; cf. Hale v. Henkel, 201 U.S. 43, 26 S.Ct. 370, 50 L.Ed. 652."

■ Kingston next contends that the subpoenas are invalid because they were

2. The substitutionary delegation is set out at 19 Fed.Reg. 8830.

issued prior to the serving of a complaint and were not made returnable at a duly noticed hearing. This contention is wholly without merit. The subpoenas were issued to acquire preliminary information essential for determining whether a complaint *should* issue against Kingston. The law does not require that the Board serve complaints before it has determined whether it possesses the requisite jurisdiction. National Labor Relations Board v. Barrett Co., 7 Cir., 1941, 120 F.2d 583, 585–586; Cudahy Packing Co. v. National Labor Relations Board, 10 Cir., 1941, 117 F.2d 692, 694; Oklahoma Press Publishing Co. v. Walling, supra, 327 U.S. at pages 201, 208–209, 66 S.Ct. at pages 501, 505–506.

■ Kingston also argues the subpoenas are void because they were not issued upon the application of a "party". Section 11 of the National Labor Relations Act [3] provides:

"The Board, or any member thereof, *shall upon application of any party to such proceedings, forthwith issue to such party* subpenas * * *." (Emphasis supplied.)

The subpoenas in the instant case were requested by the Regional Director who directed the Chief Law Officer as follows:

"As chief Law Officer, will you please, on my behalf, take care of the issuance of subpoenas duces tecum against Kingston Trap Rock Co., Pennington Quarry Co., and Lambertville Quarry Co. along the lines previously discussed."

Section 102.8 of the National Labor Relations Board Rules and Regulations [4] defines "party" as follows: "The term 'party' as used herein shall mean the Regional Director * * *" The subpoenas were prepared by and bore the name of "Ramey Donovan, Chief Law Officer of the National Labor Relations Board, Fourth Region." Because of that

fact, Kingston contends the subpoenas were issued upon the application of one who is not a "party". It is clear, however, that the Chief Law Officer was merely acting in the capacity of counsel for the Regional Director who concededly is a "party".

■ Finally, Kingston urges that the subpoenas are burdensome and oppressive and therefore constitute an abuse of process which this Court should restrain. Kingston makes the following claims as a basis for this contention: (1) the material sought is required by Kingston in a current lawsuit and there is a danger that the Board will hold this material for so long a period of time as to hinder Kingston in its private litigation; (2) the material sought would be of great value to the complaining Union and would be used by other Unions against Kingston and its customers; and (3) Field Examiner Zurlnick is not impartial and consequently there is a danger that the material would be transmitted to the Union.

As to point 1, it is obvious that the administration of a legislative program cannot be made subservient to unrelated private litigation. Furthermore, we agree with the District Court's observation that the information demanded by the Board can be furnished with very little difficulty or expenditure of time.

Points 2 and 3 are inexcusably scandalous and utterly without merit. The astonishing contention that one may refuse to comply with a proper subpoena because of a self-conjured groundless suspicion that there is "danger" that a governmental employee will commit a wrongful act is brazen and insulting.

We cannot refrain from the observation that Kingston's tactics throughout this proceeding have been patently dilatory and obstructive and totally unjustifiable.

For the reasons stated the Order of the District Court will be affirmed.

**3.** 29 U.S.C.A. § 161(1).
    **4.** 29 Code of Fed.Reg. 102.8.