Adolph **HOHENSEE** et al., Plaintiffs,

v.

**GOON SQUAD** et al., Defendants.

Civ. A. No. 6444.

United States District Court
M. D. Pennsylvania.
March 19, 1959.

---

10. Id., at page 355.

Adolph Hohensee, and others, plaintiffs, pro se.

Eugene F. Smith, Scranton, Pa., for defendant, John W. Murphy.

Williamson & Cupp, Williamsport, Pa., for defendant, Leon Witkin.

Warren, Hill, Henkelman & McMenamin, Scranton, Pa., for defendants, The Scranton Times and George Clark.

Daniel H. Jenkins, U. S. Atty., Robert J. Hourigan, Asst. U. S. Atty., Scranton,

Pa., for defendants, Norman S. Hommel, Robert T. Zimmerman, John C. Taylor, and L. Troy Jacobs.

FOLLMER, District Judge.

The plaintiffs in this action are Adolph Hohensee, Mildred Hohensee, Richard Roe No. 1, Richard Roe No. 2, Richard Roe No. 3, and Richard Roe No. 4. The defendants are listed as follows: The Goon Squad, its officers and members, John Doe No. 1 through No. 4; Norman S. Hommel; John W. Murphy; Robert T. Zimmerman; John C. Taylor; Herbert A. Cox; O. G. Blackwell; Max Barnhouse; John W. Wilson; Leon Witkin; Leonard Tunis; Jesse Woolfolk; L. Troy Jacobs; John Shields; Basil J. Carabella; Harry J. Shaffer; Albert L. Watson; Stephen A. Teller; J. Julius Levy; George Clark; Robert Hourigan; Joseph J. Gercke; Scranton Times; J. A. Purcell; Marilyn Ferguson; J. Alex Zehner; Hearst Publications Co., Inc.; New York News Syndicate Co., Inc.; John J. Kane; John W. Walker; Howard B. Stewart; William N. Nicols; Nathaniel K. Beck; G. H. Rhorer; Gilbert Cloonan; Donald A. Surine; John M. Siemien; Ross Geise; S. Walker; James V. Bennett; American Medical Association, its officers and members, John Doe No. 5 through No. 8; Allegheny County Medical Society, its officers and members, John Doe No. 9 through No. 12; Affiliated Better Business Bureau, Inc., its officers and members, John Doe No. 13 through No. 16; Better Business Bureau of Pittsburgh, Inc., its officers and members, John Doe No. 17 through No. 20; Board of Managers of the Allegheny Soldiers and Sailors Memorial Hall of Pittsburgh, Pa., its officers and members, John Doe No. 21 through No. 24; John Doe No. 25 to John Doe No. 975. There is no indication in the complaint of the residence of any of the plaintiffs or any of the defendants.

The complaint alleges that the action is brought under the antitrust laws of the United States and in it the plaintiffs seek treble damages in the sum of Ten Million Dollars and injunctive relief.

Plaintiffs allege that at all times mentioned in the complaint they were engaged in interstate commerce in the following businesses: lecturing; public relations; selling of food products; selling of other products; publishing, writing and distributing books, periodicals and other publications; other businesses. Plaintiffs further allege that during the period therein, to wit: beginning July 31, 1957 to and including June 14, 1958, defendants conducted a conspiracy against plaintiffs in restraint of trade and commerce between the several states, consisting of the following overt and unlawful acts:

a. Libel.

b. Slander.

c. Destruction of personal property.

d. Confiscation of personal property.

e. Unlawful search and seizure.

f. Ransacking of premises.

g. Assault and battery.

h. Abuse of process.

i. False arrest.

j. Obstruction of justice.

k. Impairment of credit.

l. Caused manufacturers to not supply items.

m. Caused the forced sale of real and personal property.

n. Other unlawful overt acts.

o. Destruction of businesses.

Plaintiffs claim that as the result of the alleged conspiracy they were injured in the destruction of lecture business, destruction of product sale business, destruction of health, loss of freedom and liberty, other losses and injuries.

The Marshal's return indicates that service of Summons and Complaint was made on the following: Norman S. Hommel, Custodial Force, Robert T. Zimmerman, Custodial Force, John C. Taylor, Warden United States Penitentiary at Lewisburg, Pa., Leon Witkin, Chief Medical Officer, and L. Troy Jacobs,

Senior Technical Assistant, John W. Murphy and The Scranton Times.

There is presently before the Court

1. Motion of plaintiffs to transfer the case to the United States District Court for the Eastern District of Pennsylvania.

2. Motion of defendants, Norman S. Hommel, Robert T. Zimmerman, John C. Taylor, and L. Troy Jacobs, to dismiss on the grounds,

(a) lack of jurisdiction of the subject matter,

(b) lack of jurisdiction over the person,

(c) failure to state a claim on which relief can be granted,

and motion by the same defendants to strike for the reasons,

(a) complaint is impertinent and scandalous,

(b) allegations of the complaint are impertinent and scandalous,

(c) complaint is absurd and preposterous.

3. Motion of Leon Witkin to dismiss on the grounds,

(a) complaint fails to state a claim on which relief can be granted,

(b) complaint is scandalous.

4. Motion of John W. Murphy to dismiss on the grounds,

(a) failure to state a claim on which relief can be granted,

(b) lack of jurisdiction of the subject matter,

(c) lack of jurisdiction over the person.

5. Motion of The Scranton Times and George Clark to dismiss on the grounds,

(a) lack of jurisdiction over the subject matter,

(b) lack of jurisdiction over the person,

(c) failure to state a claim on which relief can be granted,

and by the same defendants to strike for the reasons,

(a) complaint is impertinent and scandalous,

(b) failure to identify four of the plaintiffs who are identified in caption of complaint respectively as Richard Roe No. 1, No. 2, No. 3, and No. 4.

6. Motion of plaintiffs to strike motions of Norman S. Hommel, Robert T. Zimmerman, John C. Taylor, and L. Troy Jacobs to dismiss for the reason substantially that Daniel H. Jenkins, United States Attorney for the Middle District of Pennsylvania and attorney of record for said penitentiary official movants, has no authority under the law to so represent them as the movants are herein sued for their own tortious acts arising independently of their official duties.

7. Motion of plaintiffs to strike motion of John W. Murphy to dismiss substantially for the reason that Eugene F. Smith, law clerk for defendant John W. Murphy, Chief Judge of the United States District Court for the Middle District of Pennsylvania, and attorney of record for said John W. Murphy, is barred from practicing law in any court of the United States, and accordingly for that reason the said motion is defective from its inception.

■ Plaintiffs' motion to transfer the case to the United States District Court for the Eastern District of Pennsylvania is denied. At the time of service all defendants served were residents of this district, so that a transfer certainly would not be for their convenience. Plaintiffs have set forth no facts to establish the contrary.

■ Motion of plaintiffs to strike motion of defendants, Norman S. Hommel, Robert T. Zimmerman, John C. Taylor, and L. Troy Jacobs is denied. This motion is predicated on the fact that the four defendants, all of whom were employees of the United States Penitentiary at Lewisburg, Pennsylvania, an agency of the United States, were represented without authority by the United States Attorney. This is completely without merit.

The United States Attorneys' Manual, Title 3, Civil Division, Page 3, under the caption "Representation of Government

Officers and Employees," states, inter alia, as follows:

"It is the general policy of the Department to afford counsel and representation to Government officers and employees when suits for injunction, mandamus, etc., are brought against them in connection with their performance of their official duties. * * *"

■ Motion of plaintiffs to strike motion of defendant, John W. Murphy, for the reason that Eugene F. Smith, law clerk for said defendant in his capacity as Chief Judge, United States District Court for the Middle District of Pennsylvania, is barred from practicing law in any court of the United States, and accordingly the motion is fatally tainted, is denied. In support of their motion plaintiffs cite "62 Stat. 926, sec. 955, 28 U.S.C.A. 955." This section reads as follows:

"The clerk of each court and his deputies and assistants shall not practice law in any court of the United States."

It so happens that Mr. Smith is law clerk to Chief Judge John W. Murphy. He is not a clerk of any court nor a deputy or assistant clerk of any court. This motion is frivolous in the extreme.

Now as to the motions of all defendants to dismiss the complaint.

■ This Court takes judicial notice of the fact that El Rancho Adolphus Products, Inc., a corporation; Scientific Living, Inc., a corporation; and Adolphus Hohensee, an individual, were found guilty by verdict of a jury on seven counts charging misbranding of drugs in interstate commerce. The trial judge, Hon. Albert L. Watson, a defendant herein although not served, refused defendants' motions in arrest of judgment and for a new trial (140 F.

Supp. 645). Judge Watson imposed a penitentiary sentence on defendant Hohensee.

About the same time there was before Chief Judge Murphy of this Court, a defendant herein, application by Federal Trade Commission for an order requiring Scientific Living, Inc., a corporation under investigation, to comply with a subpoena duces tecum of the Commission duly authorized and served on corporation in course of investigation. Judge Murphy refused defendants' motion to quash the subpoena and ordered compliance (150 F.Supp. 495). Plaintiff herein, Adolph Hohensee, was a principal officer of the said Scientific Living, Inc., the corporation then before Judge Murphy.

The brief of the Government in the instant proceeding states that the defendants, Hommel, Zimmerman, Taylor and Jacobs, were officials of the United States Northeastern Penitentiary,[1] Lewisburg, Pennsylvania, during the time the plaintiff, Adolph Hohensee, was incarcerated there. This has not been denied.

Plaintiffs have had considerable experience in the United States District Court for the Middle District of Pennsylvania and they are not happy about it.[2] In fact, they feel aggrieved to the tune of Ten Million Dollars which even in a time of billion dollar budgets is not to be "sneezed at."

The plaintiffs are fortified by four of the phantom Roe family as co-plaintiffs. Albeit with the inclusion of almost one thousand from the phantom Doe family, actually seven defendants were served. These defendants include the Chief Judge of this Court, before whom on occasion the plaintiff, Adolph Hohensee, was a litigant; the five employees of the United States Penitentiary, whose duties included that of hosting the plaintiff, Adolph

---

1. The correct designation is now "United States Penitentiary, Lewisburg, Pennsylvania."

2. United States v. El Rancho Adolphus Products, D.C.M.D.Pa., 140 F.Supp. 645, affirmed United States v. Hohensee, 3

Cir., 243 F.2d 367, certiorari denied 353 U.S. 976, 77 S.Ct. 1058, 1 L.Ed.2d 1136; Federal Trade Commission v. Scientific Living Inc., D.C.M.D.Pa., 150 F.Supp. 495.

Hohensee during his involuntary stay at that institution; and The Scranton Times, whose duty to publish all the news that is fit to print and which apparently did from time to time publish the activities of the United States District Court for the Middle District of Pennsylvania, including those involving the said Adolph Hohensee. Defendant George Clark who was not served but joined his employer, The Scranton Times, in its motion to dismiss, was the reporter who apparently wrote the news items of the said court proceedings. Out of that background we are asked to find the kind of stuff that makes for a violation of the antitrust laws of the United States.

There is nothing in the complaint to indicate a diversity of citizenship. That is jurisdictional and the responsibility of showing such is on the plaintiffs. Lacking diversity the plaintiffs must look to a federal statute or the Constitution to establish jurisdiction. They have elected to proceed under the antitrust laws which do not include diversity as a jurisdictional prerequisite.

■ Clearly, the complaint fails to state a claim against any of the defendants upon which relief can be granted. The complaint sets forth no interstate involvement nor that any of the defendants are in competition with plaintiffs or have any interest in any competing business.

In Glenn Coal Co. v. Dickinson Fuel Co., 4 Cir., 72 F.2d 885, 887, the court said:

"Thus it has been held in numerous federal decisions that in a civil suit under this special Act the declaration must allege facts from which the court can determine that there has been a violation of the Act with resultant damage proximately caused thereby to the plaintiff. In Alexander Milburn Co. v. Union Carbide & Carbon Corp., 4 Cir., 15 F.2d 678, 680 (certiorari denied, 273 U.S. 757, 47 S.Ct. 459, 71

L.Ed. 876) this Court, by Judge Parker, said:

"'For it is not sufficient that the declaration be framed in the words of the statute, or that it allege mere conclusions of the pleader. It must describe with definiteness and certainty the combination or conspiracy relied on, as well as the acts done which resulted in damage to plaintiff, and, in doing so, must set forth the substance of the agreement in restraint of trade, or the plan or scheme of the conspiracy, or the facts constituting the attempt to monopolize. * * *' "

The complaint is furthermore fatally defective in that it fails to charge any injury to the public.

In Shotkin v. General Electric Co., 10 Cir., 171 F.2d 236, 239, the court stated:

"* * * In other words, the complaint failed to allege facts from which it could be determined as a matter of law that a combination or conspiracy was entered into which brought about an increase in prices to the consuming public, a diminution in the volume of merchandise in the competitive markets, a deterioration in the quality of the merchandise available in the channels of commerce, or any other like evil consequence in the free flow of interstate commerce. Instead, the pleading bore clear internal indications of a personal grievance on the part of plaintiff based solely and exclusively upon the declination of the defendant Westinghouse Electric & Manufacturing Company further to transact business with him as an outlet for its manufactured merchandise, with no evil consequence to the consuming public. * * *."

And Feddersen Motors, Inc. v. Ward, 10 Cir., 180 F.2d 519, 522, citing Shotkin, supra, stated:

"* * * But injury to plaintiff alone is not enough upon which to predicate such an action. There

must be harm to the general public in the form of undue restriction of interstate commerce. An appreciable part of such commerce must be the subject of the monopoly, restraint, or conspiracy. And a general allegation of the forming of such a combination or conspiracy with resulting injury to the public and to the plaintiff is not enough. While detail is not necessary, it is essential that the complaint allege facts from which it can be determined as a matter of law that by reason of intent, tendency, or the inherent nature of the contemplated acts, the conspiracy was reasonably calculated to prejudice the public interest by unduly restricting the free flow of interstate commerce. * * * "

■ As to The Scranton Times and its reporter, George Clark, it will suffice to say that the freedom of the press guaranteed by the First Amendment precludes any claim by plaintiffs against them under the antitrust laws of the United States. As no details of what part either the "Times" or Clark played in the alleged conspiracy it would appear that reference is had to various news items of plaintiffs' numerous court appearances. There is nothing to indicate libel and even if so, certainly no violation of the antitrust laws.

■ The case against Judge Murphy and the five employees of the United States Penitentiary is likewise easily disposed of. It is hornbook law that so long as a judge has jurisdiction he is not civilly liable to the parties in a law suit for his rulings in a case.

In Bradley v. Fisher, 13 Wall. 335, 347, 80 U.S. 335, 347, 20 L.Ed. 646, Justice Field speaking for the Court said:

"Nor can this exemption of the judges from civil liability be affected by the motives with which their judicial acts are performed.

The purity of their motives cannot in this way be the subject of judicial inquiry. This was adjudged in the case of Floyd and Barker, reported by Coke, in 1608, where it was laid down that the judges of the realm could not be drawn in question for any supposed corruption impeaching the verity of their records, except before the king himself, and it was observed that if they were required to answer otherwise, it would 'tend to the scandal and subversion of all justice, and those who are the most sincere, would not be free from continual calumniations.' "

See also 48 C.J.S. Judges § 63; Allen v. Biggs, D.C.E.D.Pa., 62 F.Supp. 229; Ginsburg v. Stern, 3 Cir., 263 F.2d 458.

In Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 141, 118 A.L.R. 1440, the court said:

"In several of the cases in which the rule of immunity has been applied the rationalization used has been that the particular defendant was a judicial officer, or was engaged in a judicial determination, or was so closely associated with the judicial process as to make necessary his protection from harassment in order to protect the judicial process. * * *

" * * * the rule as now declared in many cases has been applied, not only to officials judicial and quasi-judicial, but to executive officers generally, such as the Postmaster General, the Secretary and Assistant Secretary of the Treasury, Members of the United States Parole Board, the Parole Executive, the Warden of a Federal penitentiary, the Director of the Bureau of Prisons, the Commissioners of the District of Columbia, the Chairman of the Tariff Commission, a building inspector, the United States Commissioner of Indian Affairs, and the Chief of Record and Pension Office of the War Department."

Certainly the five employees of the penitentiary, defendants herein, were "so closely associated with the judicial process as to make necessary (their) protection from harassment in order to protect the judicial process," there being nothing in the complaint to indicate any other activities on their part aside from the performance of their duties as penitentiary employees.

Accordingly, the action should and will be dismissed.